## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
SAFIYA HOSKINS,                                     )
                                                    )
                    Plaintiff,                      )
                                                    )
        v.                                          )        Civil Action No. 11-1779 (RBW)
                                                    )
HOWARD UNIVERSITY, et al.,                          )
                                                    )
                    Defendants.                     )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Safiya Hoskins brings this action against the defendants asserting claims for

sexual harassment, hostile work environment, retaliation, and discrimination based on gender

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (2006),

as well as tort claims under District of Columbia common law.[1]  <u>See</u> Complaint and Prayer for

Jury Trial ("Compl.") ¶ 1.  Currently before the Court are the motions of defendants Howard

University ("Howard") and Barron Harvey to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Upon careful consideration of the parties' submissions,[2] the Court

concludes for the following reasons that the defendants' motions must be granted in part and

denied in part.

_____

[1] The complaint names the following defendants: Howard University, Charles Webb, Henry Turner, and Barron Harvey.

[2] In addition to the complaint, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant Howard University's Motion to Dismiss ("Def. Howard's Mem."); (2) the Memorandum of Points and Authorities in Support of Defendant Barron Harvey's Motion to Dismiss ("Def. Harvey's Mem."); (3) the Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss ("Pl.'s Opp'n"); (4) Defendant Howard University's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def. Howard's Reply"); and (5) Defendant Barron Harvey's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def. Harvey's Reply").

# I. BACKGROUND

The plaintiff, an African-American female, was formerly employed as an Assistant Director for Training and Communications at the District of Columbia Small Business Development Center at Howard University's School of Business (the "Center"). Compl. ¶¶ 6, 8. She held this position from September 2009 until her termination in July 2010. Id. ¶ 6. During this period, defendant Charles Webb was the Director of Finance at the Center, defendant Henry Turner was the Center's Executive Director, and defendant Barron Harvey was the Dean of the School of Business. Id. ¶ 7. The complaint contains the following factual allegations.

Starting in September 2009, "Webb began to verbally and sexually harass the [p]laintiff by sharing details of inappropriate dreams and engaging in unwelcomed advances." Id. ¶ 12. He "expressed that he had a strong sexual attraction for the [p]laintiff," and would "blam[e] the plaintiff for his arousal" by telling her things such as "you make me excited," "I cannot control my feelings for you," and "you turn me on." Id. During one encounter in October 2009, Webb "grabbed [the plaintiff's] arm and held her against her will." Id. ¶ 13. "The [p]laintiff suffered physical pain and bruises on her arm as a result of Webb's grip that lasted for two weeks." Id. Following this encounter, Webb continued to make sexual remarks to the plaintiff, sharing "details of his life as a philanderer, his obsession with sex and his abuse of pornography and prostitutes," as well as his desire to have sex with the plaintiff. Id. ¶ 14. At one point, Webb suggested that he had considered sexually assaulting the plaintiff, telling her that he had "watched her walk all the way to the parking lot one dark evening" and warning that she "should pay more attention when . . . walking at night and be more aware of [her] surroundings[] because, if [he] was [his] old self [he] might have grabbed [her] and done something to [her]."

Id. ¶ 14.  He also made "moaning sounds" and inappropriate "gesture[s] including licking his lips and acting as though he was holding himself back from grabbing her."  Id.

During another incident that occurred on February 4, 2010, Webb became outraged upon learning that the plaintiff was going to receive a salary increase.  Id. ¶ 15.  He shouted at the plaintiff in an "uncontrollable rage," exclaiming "I will have you fired!" and "[y]ou cannot make more money than me!".  Id.  Webb's "rage and verbal assaults became violent because [the p]laintiff would not share the details of her earnings with him."  Id.  He "threatened [the p]laintiff's physical safety" and "positioned himself to strike" her.  Id.  The plaintiff then "went into her office and shut the door" to escape Webb, after which he eventually stopped shouting and left the office.  Id.

The plaintiff relayed her concerns about Webb to her direct supervisor, defendant Henry Turner, by email on February 5, 2010, and then in person on February 12, 2010.  Id. ¶ 16. Turner defended Webb's behavior, stating that "Webb is a minister," and that "when [he] first came to work here he said that he could not even drive with a woman in his car."  Id. ¶ 17. Turner also placed blame on the plaintiff for the incident by stating that she "had too much caffeine," which caused her to be "giddy," and that this might have affected how Webb construed her actions.  Id.  He noted that Webb had worked with women before without any problems, and wondered what made Webb's interactions with the plaintiff any different.  Id.  The plaintiff "expressed that she feared for her safety as a result of Webb's erratic behavior," in response to which Turner "promised to keep their discussion in confidence until a mutually agreeable solution could be reached."  Id.  However, despite this promise, within "less than an hour" Turner told Webb about the plaintiff's complaint and their ensuing discussion.  Id. ¶ 18. Fearful for her safety, the plaintiff "closed and locked her office door."  Id.  "Only minutes after

the reported breach, Webb came to her office and began shouting her name, banging and twisting the knob for uninvited access." Id.

The plaintiff filed a formal complaint regarding Webb's conduct with Howard's Equal Employment Opportunity ("EEO") Office on February 16, 2010. Id. ¶ 19. Later that same day, the plaintiff received a call from a human resources representative at Howard who informed the plaintiff that she had been "researched" and "it had had been determined that she was overpaid." Id. ¶ 20. When the plaintiff asked whether other employees' salaries had been "researched," she did not receive a direct answer. Id. Instead, the human resources representative offered several incoherent and inconsistent reasons for the "manipulation of her salary and the standing of her payroll account." Id. The plaintiff never received a formal explanation for this salary adjustment. Id.

Ultimately, as a result of the plaintiff's complaints, Webb was "removed to the Dean's office to minimize contact" with the plaintiff. Id. ¶ 24. Following Webb's transfer, the work environment at the Center became "exceedingly hostile." Id. ¶ 25. "Male counterparts stopped speaking to [the p]laintiff" out of fear of being transferred. Id. They would "exclude [the p]laintiff from meetings and laugh in her presence, saying things like, 'you better be careful what you say,' or 'you know how women are.'" Id. Certain male employees would address the plaintiff "from a distance and exaggerate[] formalities like stepping aside and keeping a 'safe and respectable' distance from the [p]laintiff." Id.

Turner, in particular, rarely spoke to the plaintiff directly and would instead communicate with her through intermediaries, even when they were in the same room. Id. He avoided contact with her at work-related functions and declined to invite her to certain events to which the plaintiff, as the Center's "communications director," was "always invited." Id. ¶ 30. The

4

plaintiff later learned that Turner was working with other employees "to manipulate information to get rid of" her.  Id. ¶ 27.  Turner also expressed insensitivity in regards to the plaintiff's situation with Webb.  Id. ¶ 31.  For instance, on March 8, 2010, Turner sent the plaintiff an email informing her that Webb would be in the office in the coming days and that "the [p]laintiff was required to be there as well."  Id.  The plaintiff then spoke with individuals in the Dean's Office and the EEO to express her discomfort with this situation, and was provided "a space in the Dean's Office for her to work from that day."  Id.  Then, on March 9, 2010, Turner told the plaintiff that she was expected to attend a "[d]irector's [m]eeting" on March 15, 2010, that Webb was also scheduled to attend.  Id. ¶ 32.  When the plaintiff "advised Turner that she would not be comfortable being in the same room with Webb," he told her that "the Dean's Office told him to arrange the meeting with Webb and [the p]laintiff present," and that the plaintiff "had no choice in the matter."  Id.  ¶¶ 32-33.  The plaintiff responded that she would not attend the meeting because "she was directed by [the] EEO that legally she was not to share space with" Webb.  Id. ¶ 33.  "Turner reiterated in an increasingly hostile manner . . . that the directive came from" the Dean of the Business School, defendant Barron Harvey.  Id.

    As instructed, the plaintiff attended the director's meeting on March 15, 2010.  Id. ¶ 35. A topic of conversation at this meeting was the "Women's Small Business Development Center," a new institution being created by Howard's Business School.  Id.  Turner "expressed his disdain for such gender centers" and "refus[ed] to assist their efforts or attend their opening ceremony."  Id.  The male attendees at the meeting vocalized their support for Turner's position. Id.  The plaintiff "suggested tactful strategies for addressing the situation," to which "Turner suggested that [she] attend the ceremony."  Id.  He then asked "the only other female Director present if she would also attend."  Id.  The male employees, however, maintained that "they

would not attend." Id.  That evening, Turner sent an email "to all female staff" notifying them of the Women's Small Business Development Center grand opening, but "no men were listed on the email." Id.

The workplace hostility continued into March and April 2010.  See id. ¶¶ 36-40.  On March 25, 2010, the plaintiff arrived at her office to find that her computer's hard drive had been erased.  Id.  She was "forced to work from the lobby computer" and was unable to access the projects on which she had been working.  Id.  She obtained no assistance from Turner in addressing this matter "due to his attitude toward [her], distance, hostility, and reluctance to communicate." Id.  Later that same day, Webb returned to the office.  Id.  Upon learning of Webb's return, the plaintiff went into her office and closed the door.  Id.  The next day when she arrived at work, Webb was standing in a "narrow doorway" through which the plaintiff had to pass to enter the office.  Id. ¶ 37.  She "felt fearful and hesitated before turning the doorknob," and Webb "made no effort to move." Id.   Then, on April 7, 2010, Turner told the plaintiff "that Webb would be working in the [Center that day] due to a review visit from the [United States] Small Business Administration." Id. ¶ 39.  In anticipation of Webb's arrival, Turner told the plaintiff, in a condescending tone, "work in your office behind a closed and locked door like you usually do." Id.  Thereafter, "Webb continued to work in the same office," which caused the plaintiff to "request administrative leave." Id.  Despite the filing of her EEO complaint, that office "did not conduct [a] timely investigation," nor did it "take remedial actions to protect the [p]laintiff," id. ¶ 40, and on July 31, 2010, the plaintiff was "terminated [by Howard, allegedly] on the pretext that she failed to report to work while she was being paid," id. ¶¶ 6, 44.

Based on the foregoing allegations of discrimination, harassment, and retaliation, the plaintiff filed two complaints with the United States Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 3.  In response those complaints, the EEOC issued the plaintiff two right-to-sue letters on June 30, 2011.  Id.  After receiving these letters, the plaintiff filed her complaint with this Court on September 23, 2011, along with an application to proceed in forma pauperis ("IFP application").  The Court granted her IFP application on October 6, 2011, and her complaint was accepted for filing by the Clerk of the Court on that same date.

The plaintiff's complaint asserts the following six counts against the defendants: sex discrimination and sexual harassment in violation of Title VII (Count I), id. ¶¶ 47-50; sex discrimination and hostile work environment in violation of Title VII (Count II), id. ¶¶ 51-54; sex discrimination and retaliation in violation of Title VII (Count III), id. ¶¶ 55-5; wrongful and constructive discharge (Count IV), id. ¶¶ 58-60; intentional and negligent infliction of emotional distress (Count V), id. ¶¶ 61-63; and negligent hiring, supervision, and retention (Count VI), id. ¶¶ 64-66.  On November 1, 2011, defendants Howard and Barron Harvey each moved for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of their motions, the defendants argue that the plaintiff's claims under Title VII are untimely and insufficiently pleaded, and that her common law tort claims either fail as a matter of law or are insufficiently pleaded.  Def. Howard's Mem. at 4; Def. Harvey's Mem. at 4.[3]

---

[3] Because both the plaintiff and defendant Harvey neglected to number the pages of their respective memoranda, the Court will cite to these submissions in accordance with the pagination assigned to them by the Court's electronic case filing system.

## II.  STANDARD OF REVIEW

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint has properly stated a claim upon which relief may be granted."  Davis v. Billington, 775 F. Supp. 2d 23, 32 (D.D.C. 2011).  "For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires only that it provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)). Although "'detailed factual allegations'" are not required, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007)), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (citation and internal quotation marks omitted).  Nor may a plaintiff offer mere "labels and conclusions . . . [or] a formulaic recitation of the elements of a cause of action."  Id. at 546, 555.  Rather, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  A complaint alleging "facts [which] are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  Id. (citing Twombly, 550 U.S. at 557) (internal quotation marks omitted).

However, in evaluating a Rule 12(b)(6) motion, the complaint must be liberally construed in the plaintiff's favor and the Court must accept as true all of the well-pleaded factual allegations made therein.  Davis, 775 F. Supp. 2d at 32-33.  Nevertheless, while the Court must accept well-

pleaded factual allegations, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1950.

## III.  ANALYSIS

### A.      Timeliness of the Plaintiff's Title VII Claims

To bring a civil action under Title VII, a plaintiff must file a complaint within 90 days upon receiving a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).  The defendants assert that the plaintiff failed to file her complaint within this 90-day limitation period.  Def. Howard's Mem. at 6-7; Def. Harvey's Mem. at 6-7.  Specifically, they maintain that the EEOC issued its right-to-sue letters on June 30, 2011, but the plaintiff did not file suit until October 6, 2011, 98 days later.  Def. Howard's Mem. at 6; Def. Harvey's Mem. at 6.  The plaintiff, on the other hand, notes that while her complaint was not formally accepted for filing by the Court until October 6, 2011, she actually submitted her complaint and IFP application to the Court on September 23, 2011, within 90 days of receiving the right-to-sue letters; thus, the plaintiff argues, her Title VII claims were timely filed.  Pl.'s Opp'n at 8-10.

The Court must initially determine the date on which the plaintiff received the right-to-sue letter, as that is when the 90-day period began to run.  Because this date is not pleaded in the complaint, the Court "'must fix a presumptive date of receipt for purposes of determining whether [the p]laintiff complied with the ninety day filing requirement.'"  Ruiz v. Vilsack, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) (quoting Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 97 (D.D.C. 1995)).  "Courts generally assume that the final EEOC decision was mailed on the same day that it was issued . . . , and that the plaintiff received the decision either three or five days after it was mailed."  Id. (citing, among others, Baldwin Cnty. Welcome Ctr. v.

Brown, 466 U.S. 147, 148 n.1 (1984) (per curiam)).  Here, the right-to-sue letter was issued on

June 30, 2011.  The Court will therefore presume that the plaintiff received the letter on July 4,

2011, three days after the letter's issuance plus an additional day since the third day fell on a

Sunday.  Applying Title VII's 90-day time limit from this date, the plaintiff was required to file

her complaint no later than October 3, 2011.

The plaintiff filed her complaint and IFP application with the Court on September 23,

2011, and the Court granted her IFP application and formally filed the complaint on October 6,

2011.  See Compl. at 1 (stamped by Clerk of Court as received on September 23, 2011);

Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 2] at 1

(same).[4]  As the undersigned and other members of this Court have consistently held, Title VII's

90-day period "is tolled between the time a complaint and an [IFP application] are received by

the Court, and the time the Court rules on the application."  Washington v. White, 231 F. Supp.

2d 71, 75 (D.D.C. 2002) (collecting cases) (Walton, J.); accord Obaseki v. Fannie Mae, __ F.

Supp. 2d __, __, 2012 WL 118314, at *4 (D.D.C. 2012) (Kollar-Kotelly, J.); Nkengfack v.

American Ass'n of Retired Persons, __ F. Supp. 2d __, __, 2011 WL 4894227, at *4 (D.D.C.

2011) (Howell, J.); Ruiz, 763 F. Supp. 2d at 172 (Bates, J.); Coleman v. Potomac Elec. Power

Co., 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (Lamberth, C.J.).  Thus, the filing of the plaintiff's

complaint and IFP application on September 23, 2011, tolled the 90-day time limit, which, in

turn, resulted in her complaint being timely filed when the Court accepted it for filing on October

6, 2011.  The Court therefore rejects the defendants' arguments urging dismissal of the plaintiff's

Title VII claims as untimely.

---

[4] The Clerk of Court's time-stamp is barely visible on the copy of the complaint appearing on the Court's electronic docket.  However, the original paper version of the document is legible, and does indicate a receipt-date of September 23, 2011.

**B.**     **The Plaintiff's Claims Against Defendant Barron Harvey**

Defendant Harvey moves to dismiss the plaintiff's Title VII claims asserted against him, contending that he is not a covered "employer" and that he cannot be held individually liable under Title VII as an employee of Howard.  See Def. Harvey's Mem. at 7-8; Def. Harvey's Reply at 2.  The plaintiff has not responded to these arguments, and accordingly the Court will deem the challenges conceded.  See Evans v. Holder, 618 F. Supp. 2d 1, 13 (D.D.C. 2009) ("Where . . . a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotation marks and citation omitted)).  Moreover, the Court notes that the plaintiff's attempt to hold defendant Harvey individually liable under Title VII based on his status as an employee of Howard is squarely foreclosed by governing case law.  See Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (holding that "while a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII," and affirming the dismissal of claims against a supervisory employee because "the claims against him essentially merge[] with [the] claim against" the employer (emphasis added)).  Accordingly, the Court will dismiss the plaintiff's Title VII claims against defendant Harvey.

Defendant Harvey also moves to dismiss the plaintiff's common law tort claims of wrongful discharge, constructive discharge, intentional infliction of emotional distress, and negligent hiring, supervision, and retention, on the ground that the complaint is devoid of factual allegations specifically concerning him.  See Def. Harvey's Mem. at 12-17; Def. Harvey's Reply at 1-2.  The Court agrees.

A review of the complaint reveals virtually no allegations of wrongdoing by defendant Harvey.  The one exception is the plaintiff's claim that defendant Harvey directed her to attend a meeting at which defendant Webb was also going to be present.  Compl. ¶ 33.  However, this allegation by itself is insufficient to satisfy the plaintiff's burden of stating "a claim to relief that is plausible on its face" against defendant Harvey.  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Nor can the plaintiff sustain her claims against defendant Harvey by relying on the mere "labels and conclusions," Twombly, 550 U.S. at 555, that are asserted generally against all of the "[d]efendants" in the individual counts of her complaint, see Compl. ¶¶ 47-66.  The Court will therefore grant dismissal of all tort claims asserted against defendant Harvey.

## C.   The Plaintiff's Title VII Claims Against Defendant Howard University

Counts I through III of the complaint assert various claims under Title VII for "sex discrimination," "sexual harassment," "hostile work environment," and "retaliation" against Howard.  Compl. ¶¶ 47-57.  Reduced to their substance, these counts set forth two actionable theories of Title VII liability: (1) hostile work environment based on sexual harassment, and (2) retaliation.[5]  The Court will consider these claims in turn.

### 1.   Hostile Work Environment Based on Sexual Harassment (Counts I and II)

Title VII prohibits employers from discriminating "against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "Sex discrimination includes creating a hostile or abusive work environment if the harassment is sufficiently abusive to affect a 'term, condition, or privilege' of employment."  Davis v. Coastal Intern. Sec., Inc., 275 F.3d 1119,

---

[5] Howard asserts that the plaintiff has failed to establish a prima facie case of disparate treatment based on sex.  See Def. Howard's Mem. at 8.  But, the plaintiff does not appear to be asserting in her complaint a disparate treatment theory of liability under Title VII, nor does her opposition brief suggest that she is pursuing such a theory.  In any event, insofar as the plaintiff does seek to assert a Title VII disparate treatment claim, she has conceded her failure to establish a prima facie case of any such claim by not responding to the defendant's challenges to a disparate treatment theory of liability.

1122 (D.C. Cir. 2002) (quoting <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 66 (1986)).  To make

out a "<u>prima</u> <u>facie</u> Title VII hostile environment claim" based on sexual harassment, a plaintiff

must show that

> (1) the employee was a member of a protected class; (2) the employee was
> subjected to unwelcome[ ] sexual harassment . . . ; (3) the harassment complained
> of was based upon sex; (4) the charged sexual harassment had the effect of
> unreasonably interfering with the plaintiff's work performance and creating an
> intimidating, hostile, or offensive working environment ...; and (5) the existence
> of <u>respondeat</u> <u>superior</u> liability.

<u>Id.</u> at 1122-23 (citation omitted and alterations in original).  "Although a plaintiff need not plead

a <u>prima</u> <u>facie</u> case of hostile work environment in the complaint, the 'alleged facts must support

such a claim.'"  <u>McKeithan v. Boarman</u>, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (quoting

<u>Middlebrooks v. Godwin Corp.</u>, 722 F. Supp. 2d 82, 90-91 & n.6 (D.D.C. 2010)).

The plaintiff has plainly alleged sufficient facts to support the first three elements of her

hostile work environment claim.  First, as a female, she is a member of a protected class.

Second, she alleges that she was subjected to unwelcome sexual harassment on numerous

occasions by defendant Webb.  And third, the fact that the alleged harasser was a male supports

an inference that the "harassment complained of was based upon sex."  <u>Davis</u>, 275 F.3d at 1123;

<u>see</u> <u>id.</u> (stating that "when 'the challenged conduct . . . involves explicit or implicit proposals of

sexual activity' between members of the opposite sex 'it is reasonable to assume those proposals

would not have been made to someone of the same sex'" (quoting <u>Oncale v. Sundowner</u>

<u>Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998)); <u>Akonji v. Unity Healthcare, Inc.</u>, 517 F. Supp. 2d

83, 97 (D.D.C. 2007) ("The alleged sexual harassment was committed by Nwokorie, a man,

against Akonji, a woman, thus allowing the Court to infer that the third element of a <u>prima</u> <u>facie</u>

case is satisfied.").

The fourth and fifth elements of the plaintiff's hostile work environment claim require closer scrutiny. Howard contends that the plaintiff has failed to allege facts satisfying the fourth element, Def. Howard's Mem. at 9-10, which requires the plaintiff to show a work environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citation omitted). A court determines "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris, 510 U.S. at 23). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. at 788 (quoting Oncale, 523 U.S. at 80). To that end, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (quoting Oncale, 523 U.S. at 82).

Applying these principles here, the Court concludes that the plaintiff has pleaded adequate factual circumstances that satisfy the fourth element of her hostile work environment claim. The complaint alleges several instances of harassment by defendant Webb within a six month period. First, it states that in September 2009, Webb told the plaintiff that he was having explicit sexual dreams about her, that he wanted to have sex with her, that he blamed her for his arousal, and that he could not stop thinking about her. Compl. ¶ 12. Second, the complaint asserts that in October 2009, Webb suddenly grabbed the plaintiff's arm and held her against her

will, causing her to suffer physical pain and bruising.  Id. ¶ 13.  Webb thereafter continued to discuss sexual topics with the plaintiff, make suggestive gestures toward her, and even indicated that he had considered sexually assaulting her.  Id. ¶ 14.  Third, it claims that in February 2010, Webb became enraged after learning that the plaintiff earned a higher salary than him.  Id. ¶ 15.  He allegedly shouted at the plaintiff and "positioned himself to strike" her, after which the plaintiff took refuge in her office.  Id.  Fourth, the complaint states that later in February 2010, after learning that the plaintiff had complained about his behavior to Turner, Webb began banging on the plaintiff's office door, shouting her name, and "twisting the knob for uninvited access."  Id. ¶ 18.  As a result of Webb's conduct, the plaintiff claims that she "loathed coming to work and was fearful for what actions may be committed against her," and was forced to keep her door closed while she was in the office.  Id. ¶¶ 21, 24.  The plaintiff further represents that she took administrative leave to avoid working in the same office as Webb.  Id. ¶ 39.  Assuming the truth of the plaintiff's allegations and viewing them in the light most favorable to her, the Court finds that Webb's alleged acts were "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment."  Harris, 510 U.S. at 21 (internal quotation marks and citation omitted).

Turning to the fifth and final element of the plaintiff's hostile work environment claim, the Court finds that the plaintiff has also alleged facts sufficient to support the imposition of respondeat superior liability on Howard.  Although the complaint does not clarify whether Webb had supervisory authority over the plaintiff, it does indicate that he was the plaintiff's co-worker.  See Compl. ¶¶ 8, 10.  And "[a]n employer may be held liable for the harassment of one employee by a fellow employee (a non-supervisor) if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action."  Curry v.

District of Columbia, 195 F.3d 654, 660 (D.C. Cir. 1999).  The complaint indicates that Howard "knew" of Webb's alleged harassment as early as February 16, 2010, which is when the plaintiff filed her complaint with Howard's EEO Office.   Compl. ¶ 19.  Whether Howard took "prompt and appropriate corrective action" is a closer question.  The plaintiff acknowledges that after receiving her EEO complaint, Howard's EEO Office transferred Webb to a different office in order to "minimize physical contact" he would have with the plaintiff.  Id. ¶ 24, 32.  However, the plaintiff also claims that Howard failed to follow through on this corrective action by later directing her to attend meetings with Webb and permitting Webb to work in the same office as the plaintiff, both of which violated the EEO Office's prior directions.  See id. ¶¶ 32-33.  The plaintiff further alleges that her "direct supervisor," defendant Turner, exacerbated the situation by telling Webb about the plaintiff's complaints, ordering the plaintiff to attend meetings with Webb, and generally refusing to accommodate the plaintiff's requests that she not have contact with Webb.  See id. ¶¶ 18, 23-24, 31-33, 37, 39.  These allegations support an inference that Howard knew of Webb's harassment but failed to implement appropriate corrective action, thus satisfying the fifth element of the plaintiff's hostile work environment claim.

In sum, the Court concludes that the plaintiff has asserted a facially plausible hostile work environment claim under Title VII.  The Court therefore denies Howard's motion to dismiss this claim.

### 2.    Retaliation (Count III)

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because [s]he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-

3(a)).  To make out a <u>prima facie</u> case of retaliation under Title VII, a plaintiff must show "(1)

that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse

action by h[er] employer; and (3) that a causal link connects the two."  <u>Jones v. Bernanke</u>, 557

F.3d 670, 677 (D.C. Cir. 2009) (citation omitted).[6]  Again, as with the plaintiff's hostile work

environment claim, the plaintiff need not plead each element of a <u>prima facie</u> retaliation case to

survive a motion to dismiss, but she must allege facts that, if true, would support such a claim.

<u>See</u> <u>Rattigan v. Gonzales</u>, 503 F. Supp. 2d 56, 71-72 (D.D.C. 2007) (citing, among others,

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 515 (2002)).

Count III of the complaint alleges that after the plaintiff complained about Webb's sexual

harassment to her supervisors and filed a complaint with Howard' EEO Office, the defendants

began to "intimidate [her] and cause[] her working conditions to be so intolerable that she was

forced to use her sick leave and annual leave and requested for administrative leave."  Compl. ¶

56.  Howard does not dispute that the plaintiff's complaints were "statutorily protected activity,"

nor does it contend that the actions allegedly taken against the plaintiff were not "materially

adverse."  Focusing instead on the third element of a retaliation claim, Howard argues that the

plaintiff fails to allege any causal link between her protected activity and the alleged adverse

actions.  Def. Howard's Mem. at 10-11; Def. Howard's Reply at 4-5.  In her opposition brief, the

plaintiff seeks to clarify both the requisite causal nexus and the scope of her retaliation claim,

asserting that Howard reduced her salary, stopped giving her work, erased project information

from her computer's hard drive, and ultimately terminated her employment, all as a result of the

---

[6] The Court notes that "[i]n this circuit, a hostile work environment can amount to retaliation under Title VII."
<u>Hussain v. Nicholson</u>, 435 F.3d 359, 366 (D.C. Cir. 2006); <u>see also</u> <u>Bergbauer v. Mabus</u>, 810 F. Supp. 2d 251, 256
(D.D.C. 2011) ("Alongside a hostile work environment claim based upon sexual harassment, the D.C. Circuit also
recognizes a 'retaliation' variant actionable under Title VII.").  In addition to asserting an ordinary claim for
retaliation, some of the plaintiff's allegations could be construed to support a claim for retaliatory harassment.  <u>See,
e.g.</u>, Compl. ¶ 56.  However, because the parties' briefs do not discuss this theory of liability, the Court will not
address the matter either.

filing of her EEO complaint.  Pl.'s Mem. at 13.  Although the plaintiff relies on these allegations as direct support for her retaliation claim for the first time in her opposition brief, the allegations are fairly stated in the complaint, see Compl. ¶¶ 19-20, 36, 38, 59, and Count III (the retaliation claim) "incorporates all the allegations set forth in the preceding paragraphs," id. ¶ 55. Furthermore, because the contours of the plaintiff's retaliation theory are less than clear, the Court may look to the plaintiff's brief to clarify allegations in her complaint.  See Pegram v. Herdrich, 530 U.S. 211, 230 n.10 (2000) ("[W]e may use [a party's] brief to clarify allegations in her complaint whose meaning is unclear." (citations omitted)).

Taking the plaintiff's clarifications into account, the Court is not convinced by the contention advanced by Howard that the plaintiff has failed to sufficiently allege a causal nexus between the alleged protected activity and adverse employment actions.  To reiterate, a plaintiff need not plead all elements of her prima facie case in her complaint.  See Swierkiewicz, 534 U.S. at 515.  And "[a]t this early stage of the proceedings, [the] plaintiff can meet her prima facie burden of causation simply by alleging that the adverse actions were caused by her protected activity.'"  Bryant v. Pepco, 730 F. Supp. 2d 25, 31-32 (D.D.C. 2010) (quoting Vance v. Chao, 496 F. Supp. 2d 182, 187 (D.D.C. 2007)) (some alterations omitted).  Accordingly, the Court concludes that the plaintiff has adequately stated a retaliation claim under Title VII by asserting that she engaged in protected activity by filing a formal complaint with Howard's EEO Office, and that in response to the complaint, Howard retaliated against her by subjecting her to materially adverse actions.  See Compl. ¶¶ 19-20, 56, 59; Pl.'s Mem. at 13.  Howard's motion to dismiss the plaintiff's retaliation claim is therefore denied.

**D.      The Plaintiff's Common Law Tort Claims Against Defendant Howard University**

**1.      Wrongful Discharge in Violation of Public Policy (Count IV)**

Count IV of the complaint asserts a claim against Howard for wrongful discharge in violation of public policy based on the "acts of the [d]efendants in terminating the [p]laintiff's employment . . . because [she] exercised her right and duty as a citizen to report the unlawful conduct of Webb who was sexually harassing her."  Compl. ¶ 59.  "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991) (citations omitted).  However, in Adams, District of Columbia Court of Appeals recognized the following "very narrow" public policy exception to the at-will employment doctrine: "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."  Id. at 34.  Here, the plaintiff concedes that she was an at-will employee, but asserts that her claim falls within the Adams public policy exception because she "has a statutory right to refuse [the defendants'] sexual harassment and to report such unlawful conduct," and that she was terminated for filing "a sexual harassment complaint with [the] Howard University EEO [O]ffice."  Pl.'s Mem. at 14.

The plaintiff's wrongful discharge claim fails on multiple grounds.  First, she points to no statute or municipal regulation in support of her claim, and "the public policy exception to the at-will doctrine must be 'solidly based on a statute or regulation that reflects the public policy to be applied or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct.'"  Brown v. Children's Nat. Med. Ctr., 773 F. Supp. 2d 125, 139 (D.D.C. 2011) (quoting Holman v. Williams, 436 F. Supp. 2d 68, 76 (D.D.C. 2006)) (emphasis added).  Second,

insofar as the plaintiff seeks to rely on the anti-retaliation provisions of Title VII or the District

of Columbia Human Rights Act, D.C. Code § 2-1402.61, as the statutory basis for her wrongful

discharge claim for alleged retaliation in response to her EEO complaint, that reliance is

unavailing; those statutes provide their own express remedies for such misconduct and therefore

cannot serve as predicates for a common law wrongful discharge claim.  See Kassem v.

Washington Hosp. Ctr., 513 F.3d 251, 254 (D.C. Cir. 2008) ("The public policy exception . . .

[is] unavailable 'where the very statute creating the relied-upon public policy already contains a

specific and significant remedy for the party aggrieved by its violation.'" (quoting Nolting v.

Nat'l Capital Grp., Inc., 621 A.2d 1387, 1390 (D.C. 1993)); Carter v. District of Columbia, 980

A.2d 1217, 1226 (D.C. 2009) (refusing to "create a new exception to the at-will employment

doctrine" because the District of Columbia "Council squarely addressed the issue itself [by]

articulating an express public policy . . . and creating a specific, statutory cause of action to

enforce it").  Thus, the Court grants Howard's motion to dismiss the plaintiff's wrongful

discharge in violation of public policy claim.

### 2.      Constructive Discharge (Count IV)

Count IV of the complaint also asserts a claim for "constructive discharge," based on the

same allegations that support her wrongful discharge claim.  Compl. ¶¶ 58-60.  Namely, the

plaintiff alleges that the defendants' acts of "terminating [her] employment . . . constituted

constructive . . . discharge."  Id. ¶ 59.  As Howard points out, this claim is logically flawed.  See

Def. Howard's Mem. at 13.  The plaintiff cannot assert that she was constructively discharged

when she was actually discharged by her employer (and did not quit the job herself), for a

"constructive discharge occurs when the employer deliberately makes working conditions

intolerable and drives the employee into an involuntary quit."  Darrow v. Dillingham & Murphy,

LLP, 902 A.2d 135, 138 (D.C. 2006) (internal quotation marks and citation omitted; emphasis

added).  Accordingly, the plaintiff's claim for constructive discharge must be dismissed.

### 3.        Intentional and Negligent Infliction of Emotional Distress (Count V)

Count V of the complaint asserts claims for both intentional and negligent infliction of

emotional distress.  Compl. ¶¶ 61-63.  Howard only moves to dismiss the intentional infliction of

emotional distress claim, see Def. Howard's Mem. at 13-14, so the Court need not address

whether the plaintiff's claim for negligent infliction of emotional distress can be maintained.

Under District of Columbia common law,

> [i]ntentional infliction of emotional distress consists of (1) extreme and
> outrageous conduct on the part of the defendant which (2) intentionally or
> recklessly (3) causes the plaintiff severe emotional distress.  Intent or recklessness
> can be inferred from the outrageousness of the acts.  The conduct must be so
> outrageous in character and so extreme in degree as to go beyond all possible
> bounds of decency, and to be regarded as atrocious, and utterly intolerable in a
> civilized society . . . . The ultimate question is whether the recitation of the facts
> to an average member of the community would arouse his resentment against the
> actor, and lead him to exclaim "Outrageous!"

Purcell v. Thomas, 928 A.2d 699, 711 (D.C. 2007) (internal quotation marks, alterations, and

citations omitted).

The plaintiff's intentional infliction of emotional distress claim is based on the same

allegations as her hostile work environment claim.  See Compl. ¶¶ 62-63.  Specifically, the

complaint alleges that she suffered "humiliation and emotional distress" as a result of the

defendants' "extreme and outrageous conduct in engaging in sex discrimination, sexual

harassment[,] and hostile work environment as well as the continuous and repeated advances on

[the p]laintiff and recruiting others to aid . . . in creating [a] hostile work environment for the

plaintiff after she complained of the sexual harassment."  Id.; see also id. ¶¶ 17, 21, 26, 29, 34

(detailing the emotional distress allegedly suffered by the plaintiff).  Howard contends that these

allegations are insufficient to state a claim for intentional infliction of emotional distress.  Def.
Howard's Mem. at 13-14.  The Court disagrees.

Although both parties inexplicably fail to raise this point in their briefs, the District of
Columbia Court of Appeals has long declared that the "'[c]reation of a hostile work environment
by racial or sexual harassment may, upon sufficient evidence, constitute a prima facie case of
intentional infliction of emotional distress.'"  Purcell, 928 A.2d at 711 (quoting Howard Univ. v.
Best, 484 A.2d 958, 986 (D.C. 1984)); see also Griffin v. Acacia Life Ins. Co., 925 A.2d 564,
577 (D.C. 2007) ("Sexual harassment . . . may include misconduct by a co-employee that is
independently actionable under the common law, such as battery or intentional infliction of
emotional distress." (internal quotation marks and citation omitted)).  "In such a case, the
conduct is actionable at common law under an emotional distress theory . . . because the blatant
and repeated instances of inappropriate conduct have risen to such a level that they may properly
be regarded as extreme and outrageous."  Griffin, 925 A.2d at 578-79 (citing Best, 484 A.2d at
985).  As detailed above in the context of the plaintiff's hostile work environment claim, see
supra at 14-16, the plaintiff  has alleged "blatant and repeated instances of inappropriate"
conduct by Webb that the Court finds could, at the Rule 12(b)(6) stage, "properly be regarded as
extreme and outrageous."  Thus, Howard's motion to dismiss the plaintiff's intentional infliction
of emotional distress claim must be denied.

**4.      Negligent Hiring, Supervision, and Retention (Count VI)**

Finally, Count VI of the complaint asserts a claim for negligent hiring, supervision, and
retention against Howard based on its alleged failure "to use reasonable care despite numerous
warning[s] and complaints about the misconduct of [defendant] Webb."  Compl. ¶¶ 64-66; see
also id. ¶ 22 (asserting that prior to his alleged harassment of the plaintiff, defendant Webb "had

at least five . . . formal complaints filed against him with [Howard] University").  Howard moves

to dismiss this claim on the ground that it must be "predicat[ed] . . . on an underlying common

law [tort] theory, such as intentional infliction of emotional distress or battery," and that the

plaintiff has failed to adequately allege such an underlying tort.  Def. Howard's Mem. at 15.

However, the Court just concluded supra that the plaintiff has adequately pleaded a claim for

intentional infliction of emotional distress, a claim which, as Howard acknowledges, id., can

serve as a predicate for a negligent hiring, supervision, and retention claim, see Griffin, 925 A.2d

at 576-77 (concluding that "a claim of negligent supervision may be predicated . . . on common

law causes of action").  Consequently, the Court must deny Howard motion to dismiss Count VI

of the complaint.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants'

motions to dismiss.  In particular, the defendants' motions to dismiss the plaintiff's Title VII

claims as untimely are denied.  Defendant Harvey's motion to dismiss the claims against him is

granted.  Defendant Howard's motion to dismiss is denied as to the plaintiff's claims for

violations of Title VII, for intentional infliction of emotional distress, and for negligent hiring,

supervision, and retention.   However, defendant Howard's motion is granted as to the plaintiff's

claims for wrongful and constructive discharge.

**SO ORDERED** this 20th day of March, 2012.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an order consistent with this memorandum opinion.